FINAL ANSWER AND OPINION

ROBERT N. CLINTON, Associate Justice.
[1] On January 28, 2008, the Village of Bacavi filed the below certified question of law. On April 4, 2008, this Court issued an Interim Answer to the Certified Question and invited briefing and argument from the Hopi and Tewa Villages, the Chairman, and the Hopi Tribal Council. Most of the villages and the Chairman initially responded and oral argument on the certified question was scheduled for November 12, 2008. At that time oral argument was commenced. During the proceeding on November 12, 2008, this Court received Hopi Tribal Council Resolution H-075-2008, which raised questions about the legal authority of some of the justices of this Court given their lack of appointment by the Tribal Council. Accordingly, this Court ceased hearing argument on the Certified Question of Law on November 12, 2008. Since that date, this Court has been reconstituted with different members appointed by the Tribal Council. Because the new members of the Court had not heard the original arguments and some villages had not presented their arguments on the initial date, this Court set the matter for re-argument on December 11, 2009. At that time this Court heard oral argument from a large number of the Villages, from the former Chairman, and from other interested parties including a former tribal judge. The Court has also carefully reviewed the briefs filed on behalf of most of the various Villages and other interested parties. Despite the fact that the Tribe, through the Tribal Council had initially declined to take a position on the certified question of law, this Court again invited the Tribal Council to take a position on the Certified Question of Law and afforded the Tribal Council a limited period of time following oral argument to submit a brief or other filing reflecting its position on the Certified Question of Law. The Tribal Council accepted that invitation and has filed a written submission. The Village of Bacavi objected to that procedure and filed its own brief in reply to the Tribe’s submission.
[2] Pursuant to Hopi Tribal Ordinance 21 (“Ordinance 21”), § 1.2.8(a), this Court unanimously answers the certified question of law as follows:

CERTIFIED QUESTION OF LAW

[3] Do Villages, regardless of their form of government, have the authority to remove or decertify their duly-certified Tribal Council Representatives?

ANSWER

[4] This Court unanimously finds that the Village of Bacavi has standing to file a *82 certified question of law pursuant to Ordinance 21, § 1.2.8(a) and that, pursuant to that section, this Court has jurisdiction over this certified question of law.
[5] This Court unanimously finds that, under both the Constitution and Hopi custom and tradition, the Hopi and Tewa, Villages, regardless of their form of government, have authority to remove, recall or decertify their duly certified Tribal Council Representatives during their term of office by whatever process the Village selects and that Article TV, section U of the Constitution governs both selection and, removal, recall, or decertification of Tribal Council Representatives.

DISCUSSION

Standing and Jurisdiction

[6] Ordinance 21, § 1.2.8(a) expressly provides that “[t]he Hopi Tribal Court of Appeals shall have Jurisdiction to answer questions of Hopi tribal law, including Hopi constitutional law, certified from any tribal, federal, or state court or from any tribal, federal, or state administrative agency.” Section 1.2.8(a) therefore grants this Court power to resolve certified questions of “Hopi tribal law, including Hopi constitutional law” when certified by any of the courts or administrative agencies mentioned in the section. By enumerating “tribal, state, or federal” governments in section 1.2.8(a), the Tribal Council unquestionably meant the grant of jurisdiction contained in that section to be broad and cover any and all dispute solving bodies, i.e. adjudicative forums in which questions of Hopi law might arise, of a tribal, state or federal nature. While some Villages have objected to be labeled as administrative agencies, most of the Villages and the former Chairman agree that governmental bodies authorized by section 1.2.8(a) to certify questions of Hopi law to this Court include the Villages. This Court agrees with this conclusion.
[7] To serve its intended purpose, the Tribal Council meant section 1.2.8(a) to be exhaustive of all tribal, federal, and state adjudicative forums where questions of Hopi law might arise. Equally important, as more fully discussed below, under the Hopi Constitution the basic aboriginal, sovereign units of Hopi life are the Hopi and Tewa Villages. They constitute the source of the limited powers delegated to the Hopi national government, including the Tribal Council and this Court. In re Komaquaptewa, No. -1-AP-00013 (Hopi Ct.App. 8/16/2002). Under Article III, Section 2 of the Constitution, the Villages maintain the authority to resolve many disputes, including appointing guardians for children and incompetent members, family disputes, regulating inheritance of Village members, and assigning farm lands (within certain limitations). Resolving disputes over these reserved Village matters commonly involves roles that, if performed outside the Hopi Reservation, would be performed by a court. Questions of Hopi law or the impact of the Constitution on such questions may arise. In order to effectively perform their constitutionally-reserved dispute resolving role, which are part of their inherent aboriginal sovereignty, the Villages may need to certify questions of Hopi law, including questions under the Constitution, to this Court, should any Village so desire. Additionally, since the Villages constitute the constitutional sovereign bedrock on which the powers of the Tribe, and therefore the authority of this Court, rest, this Court cannot imagine that the Tribal Council meant to uniquely exclude the Villages from the law applying forums authorized by section 1.2.8(a) to certify questions of Hopi law to this Court. For these reasons, this Court unanimously agrees with the vast majority of Villages that ad *83 dressed this issue and finds that the Villages constitute the functional equivalent of tribal courts, within their sphere of reserved constitutional authority. For these reasons, this Court unanimously finds that the Villages may certify questions of Hopi law to this Court under section 1.2.8(a). Accordingly, this Court has jurisdiction over this question of Hopi constitutional law7 certified by the Village of Bacavi.

Village Authority to Remove or Decer-tify Tribal Council Representatives

A. Constitutional Background
[8] Prior to the initial drafting and adoption of the Hopi Constitution in 1936 there was no central Hopi government. Rather, the people comprising the Hopi Tribe lived in 12 self-governing Villages, each of which retained its own aboriginal sovereignty. Each was an autonomous, sovereign city-state. The historical letters and records filed with this Court as part of the record in this case demonstrate that the creation of a central Hopi government and the drafting of the Constitution, significantly promoted by the federal government through Oliver La Farge, was highly conti’oversial, a fact well understood by Mr. La Farge. Accordingly, unlike many of the tribal constitutions drafted pursuant to section 16 of the Indian Reorganization Act of 1934 (IRA), codified as amended at 25 U.S.C. § 476, the Hopi Constitution avoided boilerplate legal clauses and was carefully drafted to preserve the Hopi way of life. In particular, the Hopi Constitution advances a very different theory of the source of power of the Hopi Tribe than most of the tribal constitutions drafted during this period. While most of the tribal constitutions drafted at the same time suggest the source of power of the central tribal government rests with delegation from the people of the affected tribe,[1] the Hopi Constitution expressly rejects that approach. Instead, the Preamble to the Hopi Constitution states:
This Constitution, to be known as the Constitution and By-Laws of the Hopi Tribe, is adopted by the self-governing Hopi and Teiva Villages of Arizona to provide a way of working together for peace and agreement between the villages, and of preserving the good things of Hopi life, and to provide a way of organizing to deal with modern problems, with the United States Government and with the outside world generally.
(Emphasis supplied).
[9] Furthermore, the entire structure of the Hopi Constitution indicates that the *84 authority of the central government of the Hopi Tribe rests on the bedrock of the aboriginal sovereignty of the Hopi and Tewa Villages. The Villages delegated limited powers to the central Hopi government. Under Article II, section 4 of the Constitution the Villages determine Village membership. As already noted, the Constitution expressly reserves certain powers of dispute resolution to the Villages in Article III, section 2. The only officials in the current government of the Hopi Tribe selected by all members of the Hopi Tribe are the Chairman and Vice Chairman, who, pursuant to Article IV, section 7 of the Constitution are elected in at-large elections. All members of the Tribal Council Representatives, according to the express language of the Constitution, constitute “representatives from the various villages.” Const. Art. IV, sec. 1. The Tribal Council Representatives are apportioned among the Villages, not the population generally, under a formula set forth in Article IV, section 1 of the Constitution. Under Article IV, section 3, each Tribal Council representative “must be a member of the Village he represents.” And, of course, Article IV, section 4, the most critical provision for purposes of resolving this certified question of law, provides:
Each village shall decide for itself how it chooses its representatives, subject to the provisions of SECTION 5. Representatives shall be recognized by the Tribal Council only if they are certified by the Kikmongwi of their respective villages, Certifications may be in writing or in person.
[10] Thus, unlike most tribal governments adopted under section 16 of the Indian Reorganization Act of 1934, which, according to the express language of their constitutions, owe their authority to powers delegated by their people, the authority of the central government of the Hopi Tribe, according the express provisions in the Preamble of the Constitution, derives exclusively from power delegated to it by the Hopi and Tewa Villages. In this respect, as early noted by Oliver La Farge, the legal theory of the Hopi Constitution is far closer to the Article of Confederation employed by the federal government from 1781 until 1789 than the current legal theory of the United States Constitution.[2] The bedrock constitutional authority upon which the tribal sovereignly of the Hopi Tribe therefore rests is the inherent aboriginal sovereignty of the Hopi and Tewa Villages that comprise the Hopi Tribe. As in the Articles of Confederation, the Hopi Villages retain all aspects of their inherent aboriginal sovereignty not exclusively delegated by the Constitution to the central government of the Hopi Tribe.
[11] The basic structure of the Hopi government reflects this relatively unique tribal constitutional theory and structure. As already noted, under the express terms of the Constitution, Tribal Council Representatives are selected by and represent the Villages from which they came and *85 they must be members of their respective Villages. Certification of their selection occurs through the Kikmongwi of their Village. Article III, Section 4 authorizes Villages that lack a traditional Hopi form of governance or which seek to make a change or add to it to adopt a written Constitution and By-Laws. In so doing any Village “shall clearly say how the Council representatives and other village officials are chosen.... ” Thus, the Hopi Constitution, therefore leaves both the selection and the manner of selection of the Tribal Council Representatives entirely to the unfettered discretion of the Hopi and Tewa Villages, Unlike virtually all other tribal constitutions adopted under the Indian Reorganization Act of 1934, the Hopi Constitution does not expressly provide the mechanism for selection of Tribal Council Representatives, leaving both the selection and the manner of selection, instead, to processes determined separately and entirely by each Village.
B. Role of the Tribal Council Representative
[12] Based on both the written and oral arguments presented to this Court and the express language of the Hopi Constitution, it is apparent to this Court that the role of the Tribal Council Representatives is, as repeatedly suggested by Article IV of the Constitution to represent the Village which sent them to the Tribal Council. While that role certainly involves various types of work on behalf of their Villages, the structure of the Constitution clearly suggests that at an irreducible minimum the role of Tribal Council Representative involves (1) representing and presenting the political position and views of the Village from which they came to the Tribal Council and, presumably, voting accordingly and (2) clearly and often communicating and explaining the issues before, work of, and actions of the Tribal Council to the Village they represent. Thus, under the Constitution, the Tribal Council sits to hear the views of the Villages, to deliberate, to take action on matters of concern to the entire Tribe, and to explain those decisions to the Villages. Understanding this complex and important relationship and the role of trust vested in each Tribal Council Representative by his or her Village is important to resolving certified question of law before this Court.
C. The Problem of Constitutional Interpretation
[13] The certified question of law presented by the Village of Bacavi poses an important constitutional question which seems to implicate a potential conflict between various clauses in the Hopi Constitution. On the one hand, the entire structure of the Constitution indicates that the Tribal Council Representatives are selected by and represent the Villages and Article IV, section 4 expressly provides that “[e]ach village shall decide for itself how it chooses its representatives.” On the other hand, Article IV, section 2 provides an express term of office for representatives of two years and the only express provision for discretionary removal before the expiration of that two year term is found in Article V, section 2,[3] which states:
*86 Any officer or representative may be removed from office for serious neglect of duty, by a vote of not less than two-thirds of the Council, after the officer to be so removed has been given full opportunity to hear the charges against him and to defend himself before the Council.
Thus, Article V, section 2 expressly contemplates the possibility of removal for cause before the expiration of the term of a Tribal Council Representative, but only following notice and a full and fair hearing before the Tribal Council. Most significantly, Article V, section 2 vests the removal for cause function in the Tribal Council, not the Villages. The certified question of law posed by the Village of Bacavi petition raises the question of whether the power of removal or decertifi-cation of a Tribal Council Representative before expiration of his tivo year term, while not express in the Constitution, nevertheless remains within the reserved rights of aboriginal sovereignty retained by the Hopi and Tewa Villages under the Constitution. Another way of expressing the same question is whether the removal power for cause granted to the Tribal Council is Article V, section 2 is, as argued by the Tribal Council, exclusive or, rather, constitutes a power expressly delegated to it without diminishing inherent Village authority over the same matter. For the reasons stated in the next section, this Court unanimously finds that the Hopi and Tewa Villages retain power under the Constitution to remove, recall, or decertify their Tribal Council Representatives dur-tag their two year term of office and may either leave the seat vacant or substitute, utilizing their powers under Article IV, section 4 of the Constitution, new Tribal Council Representatives to fill the remaining term.
D. Village Powers to Remove, Recall or Decertify Tribal Council Representatives
[14] Prior to adoption of the Hopi Constitution there was no central Hopi government and therefore each of the Hopi and Tewa Villages unquestionably possessed inherent aboriginal powers of self-government. In re Komaquaptewa, No. 01-AJP-00013 (Hopi Ct.App. 8/16/2002); see also, Frank Waters, The Book of the Hopi 316 (1977); Ragsdale, The Institutions, Laws and Values of the Hopi Indians: A Stable State Society, 55 U.M.K.C. L.Rev. 336, 376 (1987): L. Thompson and A, Joseph, The Hopi Way of Law 48 (1944). Those inherent aboriginal powers logically must have included the power to select, remove, recall or decertify spokespersons to negotiate or otherwise deal with other Villages and the outside world because without such powers the Villages would have lacked the authority to create the Hopi Constitution and By-Laws. Thus, selection, removal, recall or decertification of political spokespersons constitutes part of the inherent aboriginal sovereignty of each of the Hopi and Tewa Village.
[15] The problem posed by the certified question of law in this matter involves the question of whether the adoption of the Hopi Constitution operated to *87 deprive the Hopi and Tewa Villages of their pre-existing sovereign right to select, remove, recall or decertify political representatives. The Hopi Tribal Council objects to this formulation of the issue, which was supported by most of the Villages, including the Village of Bacavi, noting that “because prior to 1936, the Hopi Villages had not established a central tribal government and the Villages existed as “autonomous city-states,” “the removal of Tribal Council Representatives was not an inherent power of the Villages prior to the adoption of the Hopi Constitution in 1936.... ” The Hopi Tribe Brief Re: Certified Question Concerning Village Authority to Remove Tribal Council Representatives (“Tribe’s Brief’), pp. 8-9. Nevertheless, the Villages did have preexisting sovereign authority to select, remove, recall or decertify political spokespersons generally, including the spokespersons who dealt with Oliver La Farge in the drafting of the Hopi Constitution. Clearly, the manner of selection of Tribal Council Representatives set forth in Article IV, section 4 of the Constitution expressly reaffirms the pre-existing sovereign right of the Hopi and Tewa Villages to select their Tribal Council Representatives in whatever manner they choose. It constitutes a reaffirmation of preexisting sovereign power, not a delegation of new authority to the Villages. Thus, this Court rejects the excessively narrow formulation of the pre-existing aboriginal sovereign rights of the Hopi and Tewa Villages advanced by the Tribal Council in its Brief and finds that the Villages did have pre-existing inherent aboriginal sovereign rights to select, remove, recall, or decertify their political spokespersons and representatives.
[16] Clearly, no express provision of the Constitution purports to remove the powers of removal, recall or decertification of political representatives from the Hopi and Tewa Villages. Thus, if any limitation on this pre-existing sovereign power of the Hopi and Tewa Villages is to be found in the Constitution, the argument must derive from implied constitutional limitations on Village authority derived from the structure or clauses in the Constitution. The only obvious source for such an implied limitation on Village authority would be found in the combined effect of the two year term for Tribal Council Representatives set forth in Article IV, section 2 of the Constitution and the grant of a removal for cause authority to the Tribal Council in Article V, section 2. In its post-argument submission the Tribal Council took the position that the delegated removal power for officers and representatives set forth in Article V, section 2 vested the exclusive authority over removal of representatives in the Tribal Council. Neither expressly purport to limit pre-existing Village authority and there are good reasons to believe that the granting of removal authority to the Tribal Council was not meant to preclude retention of removal, recall and decertification authority in the Hopi and Tewa Villages. The Constitution established a new central government for the Hopi Tribe and its powers needed to be and were expressly delegated by the Hopi and Tewa Villages in the Constitution. Thus, if the Tribal Council was to exercise any authority to remove officials and Village representatives for cause, such powers needed to be expressly delegated in the Constitution and they were in Article V, section 2. By contrast, the Villages possessed pre-existing aboriginal sovereignty over the selection, removal, recall and decertification of political spokespersons. No express delegation was required to reaffirm that sovereignty since they already possessed it. Article IV, section 2 simply reaffirms that view for purposes of the selection of the Tribal Council Repre *88 sentatives but is otherwise silent on the question of removal, recall, and decertification. The existence of the automatic removal provisions for conviction of described offenses set forth in Article V, section 1 of the Constitution further suggests that the powers of the Tribal Council over removals for cause are not exclusive. Since nothing in the Constitution suggests that the pre-existing sovereign power of the Hopi and Tewa Villages to remove, recall, or decertify their representatives was removed from them or exclusively delegated to the Tribal Council by Article V, section 2 of the Constitution, this Court finds that the Villages continue to retain that authority under the Hopi Constitution.
[17] Numerous other considerations further support this conclusion. First, as many of the Villages reminded this Court, this question needs to be resolved consistently with Hopi custom and tradition. The Preamble to the Constitution itself indicates that one of its main purposes is “preserving the good things of Hopi life.” The history surrounding the drafting and adoption of the Constitution suggests that the Hopi drafters and Oliver La Farge sought to model the Hopi Constitution in accordance with the way Hopi was actually governed, albeit, adding in the process a new central governing authority that Hopi previously lacked. Roads in the Sky: The Hopi Indians in a Century of Change 151-52; Robert A. Hecht, Oliver La Farge and, the American Indian: A Biography 102 (1991). According to his own words, La Farge sought to have the Hopi government “listen to the true voice of each village,” which he conceived as being part of the Hopi way of doing things. In a letter dated March 7, 1940, just four years after he assisted the Hopi in drafting the original Hopi Constitution, Oliver La Farge wrote, “the villages keep a whole way of running things, which they have inherited and which they know works.” He notes that “[t]he Hopi way is to deal with local problems by villages” and indicates that this bedrock principle “must be remembered in studying any part of the Constitution.” Exhibit to Amicus Curiae Brief in Support of the Minority Answer to Certified Question from Hopi Village of Bacavi. In addition, this Court is charged by Hopi Resolution H-12-76 with taking account of Hopi customs and traditions in its decision making. Hopi Indian Credit Association v. Thomas, 1 Am. Tribal Law 353 (Hopi Ct.App. 1998). This focus on leaving all local matters primarily to Village decisions, presumably including the selection, removal, recall, or decertification of Village spokespersons including Tribal Council Representatives, constitutes a central part of the Hopi way that the Hopi and Oliver La Farge sought to preserve in the Hopi Constitution.
[18] At oral argument, this Court was repeatedly reminded that an essential part of the Hopi way is the right to decline to participate, i.e. to abstain, in decisions or actions with which one disagrees. As this Court understands the matter, the right of abstention constitutes an important political part of Hopi customs and traditions. It permits Hopi, whether individual Hopi members or whole Villages, to preserve harmony and consensus by not outright disruptively casting dissenting votes, while still politely manifesting their disagreement by declining to participate. It provides a way of preserving political civility while providing an outlet for political dissent—a tradition and custom from which the United States government could learn much. While this Court need not, and on the record before us cannot, trace the cultural origins of the right of abstention, it is sufficient to say that it clearly *89 constitutes an essential part of the Hopi Way that is far older than the Constitution itself. Indeed, a considerable part of the early controversy over the legitimacy of the adoption of the Hopi Constitution turned on how few of the eligible Hopi members voted in the Indian Reorganization Act election that approved the Constitution and the refusal of the Department of the Interior to recognize the abstentions as effective negative votes on the adoption of the document. Peter Whitely, Bacavi Journey to Reed Springs 124 (1988): Frank Waters, The Book of the Hopi 316 (1968) While this Court has no authority to and cannot revisit that debate, it also has no wish to repeat the same mistake again.[4] It recognizes that the right of abstention constitutes an essential part of Hopi custom and tradition. Not only did the Hopi seek to exercise it in the original adoption of the Constitution, but it has consistently been exercised since the adoption of that document. After the Hopi Constitution was adopted and the Tribal Council began to function, three Second Mesa villages withdrew' their representatives in 1937, objecting, among other things, to the boilerplate Law and Order Code the Secretary of the Interior was promoting for the Tribe, which they believed violated both traditional and constitutional rights. The combination of Village abstention and the refusal of the Tribal Council to enforce livestock reduction measures sought by the Secretary of the Interior led to the suspension of the Tribal Council functioning between 1943 and 1955 (with just a brief session in 1951 to submit claims under the Indian Claims Commission Act). Some villages have always refused to send representatives to the Tribal Council. This Court is informed that currently Old Orai-bi, Lower Meoncopi and Shongopavi continue to exercise their right of abstention by declining to participate in the central Hopi government. Whatever else this history suggests, it plainly demonstrates that the right of political abstention constitutes a pre-existing and enduring part of the Hopi Way. Accepting the view that the removal for cause power established by Article V, section 2 constitutes the exclusive manner in which Tribal Council representatives can be removed or recalled during their term of office, would deny the Hopi and Tewa Villages and each member of those villages their longstanding right of abstention and force them to participate in the central Hopi government after they had concluded either that their Tribal Council Representatives no longer were serving their interests or positions or that *90 they no longer wished to participate in the central government. Since this Court is charged both by the Preamble to the Constitution and by Hopi law with preserving Hopi customs and traditions, it therefore cannot agree with the Tribal Council and find that Article V, section 2 constitutes the exclusive means by which Tribal Council Representatives can be removed, recalled or decertified during their term of office. To do so would violate both the purposes for which the Constitution was established and Hopi customs and traditions. It would, in short, deny the Hopi and Tewa Villages their inherent aboriginal right of abstention. Since nothing in the Constitution indicates that the Villages gave up or were denied their sovereign right of abstention by that document and since the Hopi custom and tradition both before and since the adoption of the Constitution suggests the right of abstention persists, this Court must find, consistent with the Hopi Way, that the Villages retain their sovereign aboriginal right to select, remove, recall, or decertify their political spokespersons, including their Tribal Council Representatives, by whatever means they select. Compare, In re Komaquaptewa, No. -1-AP-00013 (Hopi Ct.App. 8/16/2002) (“Such a result seems at odds with the Constitution that sees the Hopi Tribe as composed of a group of self-governing villages”.)
[19] The Tribal Council primarily argues that recognizing a Village power of removal, recall, or decertification of Tribal Council Representatives would imperil the functioning and stability of the Hopi Tribal Council and therefore the functioning the Hopi central government. Tribe’s Brief, pp. 2-6. In making their argument, the Tribe draws close analogies to the United States Constitution. This Court cannot accept either the analogy nor the Tribal Council’s argument. As already noted, the form of government adopted by the Hopi Constitution is, in the views of Oliver La Farge, one of its principal drafters, far closer to the Article of Confederation than the United States Constitution. Thus, the analogy offered by the Tribe appears to miss the mark. More importantly, while this Court recognizes that the extensive exercise of this right may rarely threaten the efficiency and the stability of the Hopi central government, as indeed it apparently did between 1943 and 1955, this result nevertheless appears to be the result compelled by the Hopi Constitution and the Hopi Way which, by its Preamble, the Constitution was meant to preserve. The Court first notes that the Tribe’s stability concerns, as voiced in its Brief, appear at odds with and, as argued by the Tribal Council, denies the Hopi right of political abstention discussed above. The fact that Village exercise of this power of removal, recall, or decertification has not threatened the stability of the Hopi Tribal Council since 1955 indicates that the Villages have used this power responsibly and with restraint. It also suggests that the stability concerns strongly voiced by the Tribe may prove to be over-stated. Like many matters involving predictions of the future, however, only time and experience can resolve that question.
[20] The conclusion that the Hopi and Tewa Villages, regardless of their form of government, retain the aboriginal sovereign power to remove, recall, or decertify their Tribal Council Representatives during their constitutional term of office is also bolstered by the prior precedents both of this Court and of the actions of the Villages themselves. This Court has been advised in both written and oral submissions, without contradiction, that the power of removal, recall or decertification of Tribal Council Representatives during their term of office has been consistently, albeit infrequently, exercised by the Vil *91 lages and until the past few years had always been recognized and honored by the Tribal Council. At least one precedent from this Court appears to confirm that history. In Youvella v. Dallas, 2 Am. Tribal Law 369 (Hopi Ct.App.2000) two Tribal Council Representatives from Fist Mesa Consolidated Villages had been de-certified by the Kikmongwi. Based on the facts, the Tribal Council clearly recognized the decertification since the Tribal Treasurer ceased to pay them. The two had petitioned the Tribal Council for reinstatement after they were decertified and, at least in that instance, the Tribal Council recognized the power of the Villages to decertify Tribal Council Representatives during their term of office and informed the two former Tribal Council Representatives that the matter was a local one they must take up with their Villages. They sued, claiming that the Treasurer was acting ultra vires (beyond his power) in declining to pay them. Neither the deposed Tribal Council Representatives nor the Tribal government contested the power of the Villages, through the Kikmongwi, to decertify these Tribal Council Representatives during their term of office. The Youvella case therefore confirms the historical claims of the Villages that they have long exercised the power of removal, recall, or decertification of their Tribal Council Representatives and have done so, until recently, without contest or objection from the Tribal Council. This case also suggests that until recently, the Tribal Council has long recognized the constitutional conclusion that once removed, recalled, or decertified by a Village a Tribal Council Representative can only be reinstated by the Village, not the Tribal Council. In short, it is a local Village political decision. The Tribal Council therefore lacks authority to reseat or recognize a Tribal Council Representative removed, recalled or decertified by a Village unless and until the Village itself informs the Tribal Council, through its Kikmongwi or otherwise, that it has under its own processes reselected the previously removed Tribal Council Representative.
[21] Comparison of the Hopi Constitution to other Indian Reorganization Act (IRA) Constitutions adopted at the same time as the original Hopi Constitution further supports the conclusion that the Villages retain the power to remove, recall or decertify their Tribal Council Representatives before expiration of their terms of office. Many of the IRA Constitutions adopted at this time contain two very different types of removal provisions for Tribal Council members—(1) an authorization for the Tribal Council to remove for cause and (2) an authorization for the electorate to recall the Tribal Council member for any reason, including political disagreement, by a vote of the relevant voters. See e.g., Constitution of the Huala-pai Tribe, Art. V, sec. 2 (removal by Tribal Council for “gross misconduct or neglect of duty) & sec. 3 (removal by “members of the Tribe” by a recall vote); (Unamended 1938 ed.); Constitution of the Gila River Pima Maricopa Indian Community Art. VII sec. 2 (Impeachment by Tribal Council for “improper conduct or gross neglect of duty”), sec. 3 (recall by qualified electors at a special election called for that purpose) (Unamended 1936 ed.); Constitution of the Colorado River Indian Tribes, Art. V, sec 2 (removal by Tribal Council for “neglect of duty or gross misconduct”), sec. 3 (recall by vote of the eligible voters of the Colorado River Indian Tribes at a special election) (Unamended 1937 ed.). In all of these Constitutions, as in Article V section 2 of the Hopi Constitution, the power of the Tribal Council to remove for cause is limited by a stated standard of neglect of duty or misconduct and an extraordinary majority vote of the Tribal *92 Council is required for removal. In fact, the removal power of the Hopi Tribal Council set forth in Article V, section 2 of the Constitution is worded similarly and, almost identically, to many of these other Constitutions for other Arizona tribes. Yet, in these other Constitutions the existence of the Tribal Council power to remove for cause does not render this Tribal Council's power the exclusive means for removing members of the Tribal Council during their terms of office. Rather, the electorate of other tribes can also exercise their sovereign prerogative to recall members of their Tribal Council through a special recall election. Frequently, but not always, such recalls occur not so much for misconduct or other cause but over political disagreements with positions taken by the Tribal Council member. Thus, in tribal constitutions which expressly retain powers of recall in the electorate, the action of removing a member of the Tribal Council through recall is principally a political act of the electorate, rather than a finding of some misconduct. Removal provisions, like those found in Article V, section 2 of the Hopi Constitution are deliberately designed only to cover removal for cause, often gross neglect of duty, and generally afford the accused official a full and fair opportunity to defend themselves against the claimed misconduct. By contrast, recall by the people never requires any finding of cause. It is a political act reflecting the lack of continued political faith in the representative to effectively represent the interests of his or her constituents. Instructively, the Hopi Constitution contains in Article V, section 2 the removal for cause provisions found in these other constitutions, but it lacks any express recall provision. The reason for that lack is not, as argued by the Tribal Council, that the removal provision of Article V, section 2 delegates an exclusive power to the Tribal Council to remove its members. No such exclusivity exists in the other similarly worded provisions in the tribal constitutions cited above. Rather, since the Hopi Constitution does not expressly spell out an electorate or even a manner for the selection of the Tribal Council Representatives, but rather expressly leaves such matters entirely to the Villages in Article IV, section 4, the obvious corollary is that the recall function is similarly left to the Hopi Villages to remove, recall, or decertify for whateve r reason their Tribal Council Representatives by whatever means they select. Unlike the removal for cause provisions of Article V, section 2, removal, recall or decertification by the Villages does not even require any showing of cause, just as recall by the electorate in the tribes which use this device does not require any such showing. This observation answers the due process concerns expressed by some Villages and by the majority in the Interim Answer. If removal, recall or decertification of a Tribal Council Representative constitutes a political act that does not require any showing of cause, no notice, hearing or other due process is required since it is not a fact-finding process or other form of adjudication. Removal, recall, or decertification of a Tribal Council Representative is simply a political act reflecting a lack of continuing political confidence of the Village in the ability of the Tribal Council Representative to fairly and fully represent the interests of the Village.
[22] In some cases, the Villages will be in a superior position to the Tribal Council in knowing whether any particular Tribal Council Representative is fully performing his or her job. As noted above, the role of the Tribal Council Representative involves bilateral communication—representing the Village interests to the Tribal Council and informing and explaining to the Village the issues before and actions of the Tribal *93 Council. Certainly, the Tribal Council will be fully aware of any failure of a Tribal Council Representative to perform the first duty and, as Article V, section 2, recognizes will be authorized to remove any Representative for “serious neglect of duty.” By contrast, the Villages, not the Tribal Council, will be aware of failures by any Tribal Council Representative to inform and explain to the Village the issues before and actions taken by the Tribal Council. Failure to do so may never come to the attention of the full Tribal Council. Thus, the Villages need the continuing ability to remove, recall or decertify Tribal Council Representatives who fail to perform this role or who fail in their actions and votes on the Tribal Council to fully and fairly represent the views and interests of their Village.
[23] For all of these reasons, this Court unanimously concludes that the removal power of the Tribal Council contained in Article V, section 2 is not exclusive and that the Hopi and Tewa Villages, regardless of their form of government, have authority to remove, recall, or decer-tify their duly certified Tribal Council Representatives during their term of office by whatever process the Village selects.
E. Who Can Exercise the Power of Removal
[24] Some of the arguments made to this Court request that we clarify and issue advisory opinions indicating by whom, how and under what procedures a Tribal Council Representative may be removed, recalled, or decertified, This Court deems it unwise and improper in responding to this certified question of law to go that far beyond the question posed and to prescribe the answers to most of these questions in advance of a concrete case arising which provides details of the nature of the dispute. All that this Court deems it appropriate to suggest at this time in response to the request for opinion on the certified question of law is that the Constitution would seem to suggest that the power of removal, recall, or decertification rests with the Hopi and Tewa Villages in precisely the same way and under the same terms as the power to select Tribal Council Representatives. Under Article IV, section 4, that power rests with “[e]ach village which shall decide for itself how it shall choose its representatives.” The power rests with the Village as a whole. Under Article IV, the Village, not the Kik-mongwi, make that decision and the Kik-mongwi only performs a certifying role attesting to the propriety and results of the selection process. Should any Village actually decide it wants the Kikmongwi to either directly select or remove its Tribal Council Representative that is the Village’s right, but that choice of selection or removal process must be made by the Village, not the Kikmongwi acting alone. Beyond suggesting that the retention of sovereign aboriginal power of the Hopi and Tewa Villages contained in Article TV, section 4 governs not only selection of Tribal Council Representatives but also their removal, recall or decertification, this Court must leave the resolution of what appear to be on-going disputes over such procedures to another day when a concrete case arises the calls for their resolution.

. E.g. Constitution of the San Carlos Apache Tribe, Preamble (Unamended 1936 ed.) ("We, the Apache Indians of the San Carlos Reservation, wish to make use of the right of self-government and have herewith laid down, in the form of a constitution, our resolutions thereon, to be accepted and confirmed by a general tribal vote, so anybody may know how all of our internal affairs shall be carried out.); Constitution and Bylaws of the Gila River Pima-Maricopa Indian Community, Preamble (Unamended 1936 ed.) ("We, the Indians of the Gila River Reservation, in order to show our gratefulness to Almighty God, and to improve ourselves in the arts of civilization and provide a means for the orderly transaction of tribal business and the free expression of the tribal will, do ordain and establish this constitution for the government of the Pima and Maricopa Tribes, henceforward to be known as the Gila River Pima-Maricopa Indian Community); Constitution and By-Laws of the Papago Tribe, Preamble (Unamended 1937 ed.) ("We, the members of the Papago Tribe of Sells, Gila Bend, and San Xavier Reservations, in the State of Arizona, in order to build upon our established laws and customs and form a tribal organization; to establish justice; to insure tranquility and liberty; to conserve our tribal property; to develop our common resources; and to promote the best welfare of the present generation and our children’s education and industry, do ordain and establish this Constitution and By-laws.) (Emphasis supplied throughout)

. Contrast, United States Constitution, Preamble (“We the People of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America.) with Articles of Confederation, Preamble (“Articles of Confederation and perpetual Union between the states of New Hampshire, Massachusetts-bay Rhode Island and Providence Plantations, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, North Carolina, South Carolina and Georgia.”) and Art. II (“Each state retains its sovereignty, freedom, and independence, and every power, jurisdiction, and right, which is not by this Confederation expressly delegated to the United States, in Congress assembled.”) (Emphasis supplied throughout)

. Article V, section 1 also provides for mandatory, automatic removal of the Chairman, Vice-Chairman or any Tribal Council Representative who is "found guilty in tribal or any other court of a misdemeanor involving dishonesty, of a felony, or of drunkenness....” Unlike Article VI, section 2 which authorizes, but does not require the Tribal Council to remove an officer or representative for cause," under the provisions of section 1, any officer or representative found guilty of any of the listed offenses is "automatically removed from office and the Tribal Council shall refuse to recognize him.” Thus, under Article V, *86 section 1 the mere fact of conviction of any of the listed offenses during the term of office acts as an automatic removal from office. Unlike Article V, section 2, the Tribal Council has no discretion in the matter and it is not any action of the Tribal Council that operates to remove the official or representative from office. Rather, under the express language of the clause, the Tribal Council is merely bound to recognize and enforce the automatic removal. This clause, of course, expressly negates any claim that removal of Officers and Tribal Council Representatives is solely and exclusively a prerogative of the Tribal Council.

. During oral argument in this matter some questions were raised about the legitimacy of the appointment of this Court and the propriety of its hearing this case. While this Court concludes that it should not and cannot directly address those political issues in this decision, it does note that given its composition it is particularly sensitive about its knowledge of and its discussion of the Hopi way of life and Hopi customs and traditions. Nevertheless, it is charged by Hopi law with applying such Hopi customs and traditions. Ironically, in reviewing the record in this case, it found solace in a comment from Oliver La Farge, one of the prime drafters of the Hopi Constitution. In a letter dated, March 7, 1940, just four years after adoption of the Constitution, La Farge wrote:
If the Hopis are to continue to stand up in this changing world, they must learn to take responsibilities which will cause them to be criticised by some people. It has been the practice of the Hopis to call upon white men to decide disputes, and then to blame them for whatever they decided. It is time they took up this burden for themselves, just as other people do.
(Emphasis supplied). Given its composition and the fact that it has been forced by Hopi law to discuss and base part of its decision on Hopi custom and tradition, this Court can only hope that the history described by Oliver La Farge does not repeat itself.